## Conservative Building and Loan Association v. Ella L. Cady et al.

55 | 469
57 | 543
55 | 469
87 | 398
55 | 469
90 | 415

1. HOMESTEAD AND LOAN ASSOCIATIONS—*Usury Can Not be Pleaded by Members.*—Usury can not exist between parties bearing to one another the intimate relation existing between the members of a Building, Loan and Homestead Association.

2. SAME—*Members Can Not Plead Ultra Vires.*—When a member has received the benefits of a loan from a Homestead and Loan Association, such member can not plead irregularity in granting the loan as a defense to an action by the association in seeking its dues.

Memorandum.—In chancery. Appeal from the Superior Court of Cook County; the Hon. WILLIAM G. EWING, Judge, presiding. Bill to foreclose a mortgage; decree for complainant; appeal by defendant. Heard in this court at the October term, 1894. Reversed and remanded with directions. Opinion filed December 6, 1894.

APPELLANT'S BRIEF, W. D. WASHBURN AND JULIUS STERN, ATTORNEYS.

Even if the action of the association in making the advance or loan, as made, was *ultra vires*, such fact can not be taken advantage of by defendants. Union National Bank v. Mathews, 98 U. S. 621; Wherry v. Hale, 77 Mo. 20; St. Louis Drug Company v. Robinson, 18 Mo. 81; McIndoo v. St. Louis, 10 Mo. 577; Chambers v. St. Louis, 29 Mo. 543; Pac. R. R. Co. v. Seely, 45 Mo. 212; Land v. Coffman, 50 Mo. 243; A. & P. R. R. Co. v. St. Louis, 66 Mo. 228; St. Joe Fire & M. Ins. Co. v. Hauck, 71 Mo. 465; Thornton v. Nat. Ex. Bank, 71 Mo. 221; Union Nat'l Bank v. Hunt, 76 Mo. 439; Slater Woolen Company v. Lamb, 143 Mass. 420; Farmers' & Millers' Bank v. The Railroad, 17 Wis. 375; Parish v. Wheeler, 22 N. Y. 494; Rutland & Burlington R. R. Co. v. Proctor, 29 Vt. 93; Burns v. The Mil. & Miss. R. R. Co., 9 Wis. 450; Chester Glass Co. v. Dewey, 16 Mass. 94; Silver Lake Bank v. North, 4 Johns. Ch. (N. Y.) 370; Steam Nav. Co. v. Weed, 17 Barb. (N. Y.) 378; Steamboat Co. v. McCutcheon, 13 Pa. St. 13; Narragansett Bank v. Atlantic Silk Co., 3 Met. (Mass.) 282; Worcester Med. Inst. v. Harding, 11 Cush. (Mass.) 285; Congregational Society v. Perry, 6 N. H. 164; Manufacturing Co. v. Davis, 14 Johns. (N. Y.) 238; Savings Bank v. Ford, 27 Conn. 282; Alleghany City v. McCluskan, 14 Pa. St. 81; Taylor on Private Corporations, Secs. 281, 283; Darst v. Gale, 83 Ill. 136; Kadish v. Garden City Eq. L. & B. Ass'n, 47 Ill. App. 602; also, Chicago Legal News, Vol. XXVI, p. 258, Apr. 7, 1894.

The defendants were members of the complainant association when the advance or loan to them was made, and there was a substantial compliance with the statute. Robertson v. Homestead Ass'n, 69 Am. Dec. 151, note; Boone on Corporations, Secs. 108, 110; Taylor on Private Corporations, Secs. 511, 516, 518, 529; Morawetz on Private Corporations, Sec. 268; Howard Mutual Loan and Fund Ass'n v. McIntyre, 3 Allen (Mass.) 571; Mitchell v. Rome, etc., R. R., 17 Ga. 574; Plank Road Co. v. Young, 12 Md. 476; Parker v. U. S. B. & L. Ass'n, 19 W. Va. 768; Freeman v. Ottawa Bldg. Ass'n, 114 Ill. 182.

Conservative Building Association v. Cady.

But whether in this case there was strict compliance with the statute or not, and even assuming that there had been no statute on this subject, the nature of this transaction is such that usury can not be predicated.   Silver v. Barnes, 6 Bing. (N. C.) 180; Vol. 2 Amer. and Eng. Encycl. of Law, pp. 611 and 612; Hoboken Bldg. Ass'n v. Martin, 2 Beas. (N. J.) 427; Clarksville Bldg. Ass'n v. Stephens, 36 N. J. Eq. 351; Merrill v. McIntire, 13 Gray (Mass.) 157; Delano v. Wild, 6 Allen (Mass.) 1; Bowker v. Mill River Ass'n, 7 Allen (Mass.) 100; Mosley v. Baker, 6 Hare 87, and 3 De Gex, Macn. and Gor. 1032; Seagrave v. Pope, 1 De Gex, Macn. and Gor. 783; Parker v. Butcher, 3 Eq. Cases (E. L. R.), 762; Fleming v. Self, 3 De Gex, Macn. & Gor. 997; Shannon v. Dunn, 43 N. H. 194; Ver. Loan & Trust Co. v. Whithed, 49 N. W. Rep. 318; Reeve v. Ladies Bldg. Ass'n, 19 S. W. Rep. 917 (and 18 Lawyers' Reports Annotated, 129); Holmes v. Smythe, 100 Ill. 413; Freeman v. Ottawa Bldg. Ass'n, 114 Ill. 182; Winget v. Quincy Bldg. Ass'n, 128 Ill. 67; Mutual Bldg. Ass'n v. Tascott, 143 Ill. 305.

APPELLEES' BRIEF, BARTON & ZIPF, ATTORNEYS.

Appellees, in support of this case, cite the following authorities:   Endlich on Building Associations, Secs. 327, 334, 338, 346, 347, 354, 394, 396, 397, 398; Pfeister v. Wheeling Building Ass'n, 19 W. Va. 676; Stiles' Appeal, 95 Pa. St. 122; Rhoads v. Hoernerstown B. and S. Ass'n, 82 Pa. St. 180; Link v. Germantown Building Ass'n, 89 Pa. St. 15; Birmingham v. Md. Land & P. H. Ass'n, 45 Md. 455; St. Joseph & K. L. & B. Ass'n v. Thompson, 19 Kas. 321; Mills v. Salisbury B. & L. Ass'n, 75 N. C. 292; Vann v. Fayetteville B. & L. Ass'n, 75 N. C. 494; Mechanics & W. Mut. Sav. Bk. & B. Ass'n v. Wilcox, 24 Conn. 147; Hawkeye Benefit & L. Ass'n v. Blackburn, 48 Iowa 385.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

The appellant is what its name indicates, and filed this bill " to foreclose two mortgages on the same piece of property, both executed by the appellee, Ella L. Cady.   The

first securing two bonds, one for the sum of ten thousand dollars, executed by Ella L. Cady and A. E. Case; the other for one thousand dollars, executed by Spencer S. Case and A. E. Case; both bonds and mortgage bearing date July 6, 1891; and the second mortgage securing the bond of Spencer S. Case and Ella L. Cady for eighteen hundred dollars, the bond and mortgage bearing date February 5, 1892. On account of the first bond of ten thousand dollars appellant paid to appellee seven thousand two hundred dollars, and on the second bond of one thousand dollars, seven hundred and twenty dollars, and on the third bond of eighteen hundred dollars, one thousand two hundred and ninety-six dollars. The only defense made by appellee was that each of these bonds was a usurious contract, and that the appellant had forfeited its statutory right to exemption from a plea of usury by its non-compliance with the act under which it was organized and did business" (quoted from brief of appellees). Whether this is a good defense depends upon whether Cady and Spencer S. Case were members of the appellant association when they obtained the money, or not members; if they were then members, there could be no usury. Sec. 2, Act of 1879, Homestead Loan Associations.

As to the first mortgage the facts, in short, are, that on the sixth day of July, 1891, Ella L. Cady and Spencer S. Case applied to the appellant for an advance to her on one hundred shares of stock of the appellant of the twenty-fourth series, and to him on ten like shares, none of the appellees being then members. That application was then received at a special meeting of only three out of nine directors, and the bid of twenty-eight per cent premium for the advance accepted by those three.

On the seventeenth day of the same month at a regular meeting of the directors, at which a quorum was present, the action of the three directors on the sixth was ratified. Several days elapsed before the transactions were closed and the money paid over to Cady and Case, but it appears that by the twentieth day of July, 1891, the bonds and mortgages had been executed and delivered, certificates of stock

made out and indorsed in blank by Cady and Case, and retained by the appellant as part of the security for the loans, and the membership books of the appellant signed by Cady and Spencer S. Case.

When the bids were received on the sixth day of July, 1891, there was less than $2,000 in the treasury of the appellant, but where the money advanced came from, does not appear.

Now, that a homestead loan association may be organized for the purpose, and so conducted as to cover usury, is doubtless true, but in the absence of any proof, such purpose and conduct may not be presumed.    There is no such proof here.    For aught that appears by this record, every other member of the appellant association is a borrower from it upon terms as onerous as those agreed to by Cady and Case.    Section 8 of the act contemplates that at stated meetings of the board the money in the treasury shall be offered for loan to the highest bidder, but does it lie in the mouth of a borrower to say that he is not bound because the form of offering to the highest bidder was not observed, when it is apparent that had such offer been made, there would have been no bid?    That Cady and Case became stockholders as part of the transaction of obtaining the loans, is held by the Supreme Court to be of no consequence. Freeman v. Ottawa, B. H. & S. Ass'n, 114 Ill. 182.

That on the sixth day of July, 1891, there was less than two thousand dollars in the treasury, does not prove how much was there on the seventeenth.    And is it true that the validity of any part of the agreement of Cady and Case to pay either principal or interest, can be affected, even if the association did offer, in anticipation of immediate receipts, to loan money, which in fact it did loan?

Among the by-laws of the appellant are these:

" A majority of the board shall constitute a quorum for transaction of all business, provided that the funds of the association may be offered for sale by a smaller number; but no action relating to the final disposition of such funds or any other matter under consideration, shall be valid, except by the affirmative vote of a majority of the whole board."

" For every one hundred dollars of money loaned, including premium, there shall be transferred to the association, in addition to the trust deed or mortgage, one share of the capital stock of the association." Whether that first by-law is consistent with section 8, before referred to, may be questionable, but the question would seem to be one only to be raised by a competing bidder. Cady and Case are estopped to set up irregularies which in no way affect the merits. Kadish v. Garden City, etc., Ass'n, 47 Ill. App. 602.

It is not necessary to state the facts as to the second mortgage; the appellees do not claim that it stands upon a footing differing from the first.

The case was referred to a master, who reported, March 27, 1894, that the appellant was entitled to $13,997.01 and $500 attorney fees. The court sustained exceptions to the report, and June 5, 1894, entered a decree for $8,282.19.

This difference was the result of the view of the court that the defense of usury was made out.

We think it was not, and the decree is reversed and the cause remanded with directions that the Superior Court enter a decree in accordance with the master's report, with interest thereon at five per cent per annum from March 27, 1894.

Mr. Justice SHEPARD dissents.